**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Sherriea Wilkerson f/k/a Sherriea King, *on behalf of herself and all others similarly situated*, | |
| Plaintiff, | Civil Action No: 1:22-cv-676 |
| v. | **CLASS ACTION COMPLAINT** |
| Convergent Outsourcing, Inc., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

**FIRST AMENDED CLASS ACTION COMPLAINT SEEKING DAMAGES FOR**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

**INTRODUCTION**

1.  The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

2.  Plaintiff Sherriea Wilkerson f/k/a Sherriea King ("Plaintiff"), by and through Plaintiff's attorneys, brings this Complaint to challenge the actions of Defendant Convergent

Outsourcing, Inc. ("Defendant") with regard to Defendant's alleged violations of the FDCPA that caused Plaintiff Damages.

3.    Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4.    While many violations are described below with specificity, this Complaint alleges violations of the FDCPA cited in its entirety.

5.    Unless otherwise stated, all the conduct engaged in by Defendant took place in Indiana.

6.    All violations alleged herein are material violations of the FDCPA.

7.    Any of Defendant's communications described herein are to be interpreted under the "unsophisticated consumer" standard. *See Gammon vs. GC Services, Ltd. Partnership*, 27 F.3d 1254, 1257 (7th Cir. 1994).

8.    Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

9.    Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendant's named.

10.    Defendant acted at all times mentioned herein through its employee(s) and/or representative(s).

## JURISDICTION AND VENUE

11.    Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

12.    This Court has federal question jurisdiction because this case arises out of violation of federal law—namely, the FDCPA.

13.    Defendant is subject to the Court's personal jurisdiction, as Defendant conducts business within the Southern District of Indiana, and Defendant's conduct giving rise to this action accrued in the Southern District of Indiana.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that a substantial portion of the events or omissions giving rise to this action occurred in this District.

15.    Plaintiff resides in this Judicial District.

## PARTIES

16.    Plaintiff is an adult individual residing in Indianapolis, Indiana, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

17.    Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted business in the State of Indiana.

18.    Defendant is a debt collection agency operating from an address at 800 SW 39th Street, Suite #100, Renton, Washington, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

19.    Specifically, Defendant is a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.

3

20. This case involves an obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment otherwise known as a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

21. Defendant attempted to collect a "debt" from Plaintiff.

## FACTUAL ALLEGATIONS

### *Background*

22. Defendant is a debt collection agency attempting to collect a debt from Plaintiff.

23. Section 1692c(b) of the FDCPA, titled "Communication with third parties," states:

Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).

24. Section 1692c(b) cross-references section 1692b, which governs the manner in which a debt collector may communicate "with any person other than the consumer for the purpose of acquiring location information." 15 U.S.C. § 1692b.

25. The FDCPA thus broadly prohibits a debt collector from communicating with anyone other than the consumer "in connection with the collection of any debt," subject to several explicitly enumerated exceptions—some in section 1692c(b), and others in section 1692b.

26. Despite this prohibition—one designed to protect consumers' privacy—debt collectors, including Defendant, often send information regarding consumers' alleged debts to third-party mail vendors.

27.   These third-party mail vendors and their employees use information provided by debt collectors—such as a consumer's name, the name of the creditor to whom a debt is allegedly owed, the name of the original creditor, and the amount of an alleged debt—to fashion, print, and mail debt collection letters to consumers.

28.   This unnecessary practice exposes private information regarding alleged debts to third parties not exempted by the FDCPA.

29.   Upon information and belief, Defendant routinely provides protected debt collection information regarding consumer debts to third-party mail vendors (that are not authorized by the FDCPA to receive such information) in connection with the collection of a debt and in violation of the FDCPA.

### *Defendant's Improper Disclosures to a Third-Party*

30.   Plaintiff allegedly incurred a debt to Webbank that was primarily for personal, family or household purposes as defined by §1692(a)(5), (hereinafter, the "Debt").

31.   The Debt allegedly owed by Plaintiff went into default.

32.   After the Debt went into default, the Debt was placed or otherwise transferred to Defendant for collection.

33.   On or after April 7, 2021, a written communication purporting to be from Defendant was sent to Plaintiff in connection with the collection of the Debt.

34.   Under the FDCPA, 15 U.S.C. § 1692a(2), a "communication" means "the conveying of information regarding a debt directly or indirectly to any person through any medium."

35.   The April 7, 2021 letter disclosed the balance of the Debt.

36.   The April 7, 2021 letter also identified the creditor to whom Defendant alleged the Debt was owed.

37.    The April 7, 2021 letter identified Defendant as a debt collector and stated: "This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose."

38.    Upon information and belief, Defendant did not create or print the April 7, 2021 letter.

39.    Upon information and belief, Defendant did not mail the April 7, 2021 letter.

40.    The return address on the April 7, 2021 letter does not match Defendant's address.

41.    The return address on the April 7, 2021 letter is P.O. Box 1280, Oaks, PA 19456 (the "Oaks P.O. Box.

42.    The Oaks P.O. Box appears on other dunning letters from additional debt collectors as well. *See, e.g., Samples v. Medicredit, Inc*., No. 3:18-cv-00418, 2019 U.S. Dist. LEXIS 96136, at *3 (M.D. Tenn. June 7, 2019) (noting the Medicredit, Inc. dunning letter contained the address P.O. Box 1280, Oaks, PA 19456).

43.    Upon information and belief, the Oaks P.O. Box also appears on dunning letters from other debt collectors including, but not limited to, GC Services Limited Partnership.

44.    A common return address on dunning letters from different debt collectors suggests the Oaks P.O. Box is not exclusively owned by Defendant.

45.    Further, a common return address on dunning letters suggests the letters are not actually coming from the debt collectors, but instead are coming from a third-party.

46.    The Oaks P.O. Box appears to be associated with the third-party mail vendor, RevSpring, Inc.

47.    RevSpring, Inc. maintains an office at 105 Montgomery Avenue, Oaks, PA 19456 and offers comprehensive print and mail services.

48.    RevSpring, Inc.'s office in Oaks, PA is less than a half mile from the United States Post Office in Oaks, PA.

49.    RevSpring, Inc's "About Us" section on its webpage states:

> We transform complex financial journeys into intuitive financial pathways by understanding human, historical, and fiscal context. Through data-driven insight, RevSpring designs, analyzes, and improves communications and billing solutions that increase consumer engagement and payment rates.
>
> North America's leading healthcare organizations, revenue cycle management, and accounts receivables management companies trust us to maximize their financial results through dynamic and personalized print, online, phone, email, and text communications and self-service payment options.

50.    As described on its website, RevSpring, Inc. does more than merely print and mail letters—it also uses the data it receives to design the communications it sends, analyzes outcomes, and provides billing options in an effort to get more payments out of the recipients of its letters.

51.    Thus, upon information and belief, Defendant, in connection with the collection of a debt, communicated information regarding Plaintiff and the Debt—including Plaintiff's name, address, the balance of the Debt, the fact that Plaintiff was a debtor, and other private details regarding the Debt—to a third-party, RevSpring, Inc.

52.    The third-party, RevSpring, Inc., and its employees had access to and subsequently processed information about the Debt into a letter format.

53.    The third-party, RevSpring, Inc. and its employees printed the April 7, 2021 letter and sent it to Plaintiff.

54.    Plaintiff did not provide Defendant prior express consent to communicate, in connection with the collection of the Debt, with RevSpring, Inc., its employees, or any other third-party mail vendor.

55.    RevSpring, Inc. is not the consumer about whom the debt relates.

56.    RevSpring, Inc. is not the consumer's attorney.

57.    RevSpring, Inc. is not a consumer reporting agency.

58.    RevSpring, Inc. is not the creditor for the Debt.

59.    RevSpring, Inc. is not the attorney of the creditor for the Debt.

60.    RevSpring, Inc. is not the attorney of the debt collector.

61.    Defendant's communications with RevSpring, Inc. were in connection with the collection of a debt since it involved disclosure of the Debt to third parties (including RevSpring, Inc. and its employees) with the objective being to communicate with and motivate consumers, including Plaintiff, to pay the alleged debt.

62.    Further, Defendant's communications with RevSpring, Inc. was concerned with, referenced, and related to the Debt.

63.    Defendant's communications with RevSpring, Inc. invaded Plaintiff's privacy and intruded upon her seclusion by sharing private debt collection information with a third-party and its employees that were not entitled to receive such information.

64.    Defendant also caused a harm similar to a public disclosure of private facts, in that Defendant gave publicity to a third-party and its employees about a matter concerning the private life of another.

65.    Spreading private debt collection information about a consumer to third parties not authorized by the FDCPA without the consumer's consent also increases the likelihood that such debt collection information will be further spread (either intentionally or unintentionally) to other parties not authorized by the FDCPA.

## CLASS ALLEGATIONS

66.    Plaintiff brings this action on behalf of herself individually, and on behalf of all others similarly situated ("the Class").

67.    Plaintiff represents, and is a member of the Class, defined as follows:

(i) all consumers with addresses within the United States; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

68. Defendant and its employees or agents are excluded from the Class.

69. Alternatively, Plaintiff represents, and is a member of the Sub-Class One, defined as follows:

> (i) all consumers with addresses within the State of Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

70. Defendant and its employees or agents are excluded from the Sub-Class One.

71. Alternatively, Plaintiff represents, and is a member of the Sub-Class Two, defined as follows:

> (i) all consumers with addresses within the City of Indianapolis, Indiana; (ii) about whose debt Defendant communicated information in connection with the collection of such debt to any third-party vendor(s); (iii) without the subject consumer's prior consent given directly to Defendant for the communications; (iv) at any time one year prior to the date of the filing of this Action.

72. Defendant and its employees or agents are excluded from the Sub-Class Two.

73. Sub-Class One and Sub-Class Two are collectively referred to herein as the Sub-Classes.

74. Plaintiff does not know the exact number of persons in the Class or the Sub-Classes but believe it to be in the several hundreds if not thousands or more, making joinder of all these actions impracticable.

75. The joinder of the Class members is impractical and the disposition of their claims in a class action will provide substantial benefits both to the parties and to the Court.

76. The identity of the individual members of the Class and/or Sub-Classes is ascertainable through Defendant and/or Defendant's agents' records or by public notice.

77. There is a well-defined community of interest in the questions of law and fact involved affecting the members of the Class and/or Sub-Classes.

78. The questions of law and fact common to the Class and/or Sub-Classes predominate over questions affecting only individual class members, and include, but are not limited to, the following:

    a. Whether a debt collector has a right to communicate, in connection with the collection of a debt, consumer debt information with a third-party letter vendor and its employees;

    b. Whether members of the Class and/or Sub-Classes are entitled to the remedies under the FDCPA;

    c. Whether members of the Class and/or Sub-Classes are entitled to declaratory relief pursuant to the FDCPA;

    d. Whether members of the Class and/or Sub-Classes are entitled to injunctive relief pursuant to the FDCPA;

    e. Whether members of the Class and/or Sub-Classes are entitled to an award of reasonable attorneys' fees and costs of suit pursuant to the FDCPA; and,

79. As a person that received at least one written communication that appears to confirm that information about her Debt was sent to a third-party vendor in connection with the collection of the Debt, Plaintiff is asserting claims that are typical of the Class and/or Sub-Classes.

80. Plaintiff will fairly and adequately protect the interests of the Class and/or Sub-Classes.

81.    Plaintiff has retained counsel experienced in consumer class action litigation and in handling claims involving unlawful debt collection practices.

82.    Plaintiff's claims are typical of the claims of the Class and/or Sub-Classes, which all arise from the same operative facts involving unlawful collection practices.

83.    A class action is a superior method for the fair and efficient adjudication of this controversy.

84.    Class-wide damages are essential to induce Defendant to comply with federal law.

85.    The interest of class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action under the FDCPA are $1,000.00.

86.    Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims, *e.g.*, securities fraud.

87.    Additionally, members of the Class and/or Sub-Classes are unlikely to be aware of their rights.

88.    Defendant has acted on grounds generally applicable to the Class and/or Sub-Classes, thereby making appropriate final declaratory relief with respect to the Class and/or Sub-Classes as a whole.

89.    Plaintiff contemplates providing notice to the putative class members by direct mail in the form of a postcard and via an internet website.

90.    Plaintiff requests certification of a hybrid class for monetary damages and injunctive and/or declaratory relief.

## FIRST CAUSE OF ACTION
### The Fair Debt Collection Practices Act
### 15 U.S.C. § 1692 *et seq.*

91.    Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

92.    The foregoing acts and omissions constitute violations of the FDCPA, including, but not limited to 15 U.S.C. § 1692c(b).

93.    Section 1692c(b) provides that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

94.    Section 1692c(b) specifies a specifically enumerated list of entities that a debt collector can communicate with in connection with the collection of a debt and that list does not include third-party mail vendors to send debt collection letters.

95.    The harm Plaintiff suffered is particularized in that the violative initial debt collection letter at issue was sent to her personally and regarded her personal alleged Debt.

96.    And the violation of Plaintiff's right not to have her private information shared with third parties is a concrete injury sufficient to confer standing.

97.    The harm Plaintiff alleges here—disclosure of private information of a personal, sensitive nature to third-party vendors and their employees—is precisely the type of abusive debt collection practice that the FDCPA was designed to prevent. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to *invasions of individual privacy*.") (Emphasis added).

98.    Moreover, concrete injuries can be found where "intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

99.    By communicating with a third party in connection with the collection of the Debt, Defendant harmed Plaintiff by invading her privacy.

100.    By communicating with a third-party in connection with the collection of the Debt, Defendant harmed Plaintiff by disclosing private facts about the Debt, thus intruding upon Plaintiff's seclusion. |*See, e.g., Gadelhak v. AT&T Services, Inc.* 950 F.3d 458 (7th Cir. 2020).

101.    Moreover, Defendant publicly disclosed private facts about the Debt to third parties which would be highly offensive to a reasonable person and is not a legitimate concern to the public and/or third parties not authorized to receive such information.

102.    For more than a century, U.S. Court have held allegations of invasions of personal privacy are a valid basis for tort suits. *See, e.g., Pavesich v. New England Life Ins. Co*., 122 Ga. 190, 50 S.E. 68 (1905); *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911); *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918).

103.    Because of the close relationship between 15 U.S.C. § 1692c(b) and the harm that Courts in the United States have long recognized as cognizable and because of Congress's explicit statement that the FDCPA was designed to protect against invasions of individual privacy, Plaintiff and the proposed class have the requisite standing to sue and seek redress for their harms.

104.    As a result of each and every violation of the FDCPA, Plaintiff is entitled to statutory damages in an amount up to $1,000.00 and such amount as the Court may allow for all

other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of the debt collector pursuant to 15 U.S.C. § 1692k(a)(2)(B); and costs together with reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) from Defendant.

**REQUEST FOR A JURY TRIAL**

105.    Plaintiff is entitled to, and demands, a trial by jury.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendant:

- That this action be certified as a class action on behalf of the Class and/or Sub-Class One and/or Sub-Class Two as requested herein;

- That Plaintiff be appointed as representative of the Class and/or Sub-Class One and/or Sub-Class Two;

- That Plaintiff's counsel be appointed as counsel for the Class and/or Sub-Class One and/or Sub-Class Two;

- An award of statutory damages of $1,000.00 for Plaintiff and such amount as the Court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000.00 or 1 per centum of the net worth of the debt collector, pursuant to 15 U.S.C. § 1692k(a)(2)(B);

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1692k(a)(3), against Defendant;

- Any and all other relief that this Court deems just and proper.

Dated: April 4, 2022

Respectfully Submitted,


By:  /s/Richard J. Shea

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
Attorneys for Plaintiff
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com